J-A05040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CONNIE LANTZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW SIMPSON | : | No. 1279 WDA 2024 |

Appeal from the Order Entered September 18, 2024
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD 23-008356-008

BEFORE: MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED: May 30, 2025**

Connie Lantz (Grandmother) appeals from the custody order, entered September 18, 2024, in Allegheny County, regarding her grandchild, A.S. (Child) (born 01/22). Lantz, the petitioner in the trial court, is Child's maternal grandmother and appeals from the order granting the exceptions of Andrew Simpson (Father) to the hearing officer's custody recommendation and denying Grandmother expanded partial custody in the form of overnight visits with Child. After review, we affirm.

The trial court set forth the facts of this case as follows:

This matter commenced when Father[] filed a complaint for custody against [] Shannon Duffey [(Mother)], on July 23, 2023. Prior to that, Father and Mother resided together with [C]hild. Father assumed sole custody of [C]hild in July 2023 because Mother had stopped taking medication for her mental illness and was involuntarily committed to the Western Psychiatric Hospital. [. . . Grandmother] was not a party to that action.

* Retired Senior Judge assigned to the Superior Court.

When Mother was released from the hospital, she and Father resided separately. By agreement of the parties, Father has primary physical custody[,] and Mother had limited, supervised visits on weekends, without overnights. In September 2023[,] Mother moved back to live with her parents in Altoona, Pennsylvania. Mother, sometimes accompanied by Grandmother, would drive to Pittsburgh on the weekends to spend time with [C]hild. Grandmother acted as the supervisor of the visits. [] Child was never in the sole care of Grandmother on an overnight basis.

Sadly, Mother committed suicide in October 2023. After that, Father tried to maintain [C]hild's relationship with Mother's family, especially Grandmother. He would take [Child] to Altoona for visits every other weekend. Sometimes, Grandmother and other members of her family would travel to Pittsburgh and spend time with [C]hild. None of these visits, however, were overnights.

[] Grandmother was permitted to intervene and file a counterclaim seeking partial custody by order dated October 30, 2024. A hearing on Grandmother's claim for partial custody was scheduled for February 20, 2024. On that date, the parties[, now consisting of Father and Grandmother,] entered into a temporary partial custody order that granted Grandmother two periods of visitation per month, one in Pittsburgh and one in Altoona, though none of the visits would involve overnights. The matter proceeded to a partial custody hearing on June 5, 2024, which resulted in a recommended order from the hearing officer granting Grandmother overnight visits. Father filed exceptions that [the trial court], after argument, granted. [On September 11, 2024, the trial court] ordered the matter remanded to the hearing officer for entry of an order consistent with Father's proposed order[, which] kept the visitation schedule from the interim order[ and w]hich did not include overnights [for Grandmother]. The hearing officer then issued a recommended order [on September 23, 2024,] based on Father's proposed order[, which] was made final by Administrative Judge Kathryn Hens Greco. Grandmother appealed [and filed a contemporaneous concise statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i)].

Trial Court Opinion, 12/13/24, at 2-3 (footnotes, internal citations, and unnecessary capitalization omitted).[1]

On January 27, 2025, in accordance with the trial court's request and the requirements of 23 Pa.C.S. § 5323(d), this Court remanded the case to the trial court for preparation of an opinion that satisfies the court's obligations under that statute. **See M.P. v. M.P.**, 54 A.3d 950, 955-56 (Pa. Super. 2012)

---

[1] Grandmother's notice of appeal stated that she appeals from the trial court order dated August 22, 2024, and entered September 20, 2024, that granted Father's exceptions and remanded "to the hearing officer to conform an [o]rder consistent with Father's proposed custody order attached to Father's pretrial statement." Notice of Appeal, 9/23/24. On October 31, 2024, this Court issued upon Grandmother a rule to show cause why the appeal should not be quashed as a non-final order. **See** Pa.R.A.P. 341(b)(1) (final order is any order that disposes of all claims and of all parties); **see also G.B. v. M.M.B.**, 670 A.2d 714, 720 (Pa. Super. 1996) (*en banc*) (custody order is final and appealable after trial court concludes hearings on matter and resultant order resolves pending custody claims between parties). Grandmother filed a timely response, and this Court discharged the rule to show cause and referred the matter to the merits panel.

Also, on November 26, 2024, this Court issued upon Grandmother an order requiring her to file an amended notice of appeal because the appeal lies from the custody order made final by Judge Hens Greco, dated September 10, 2024, and entered September 11, 2024, with Pennsylvania Rule of Civil Procedure 236(b) notice notated in the docket on September 18, 2024. **See** Pa.R.A.P. 108(b) (date of entry of order in matter subject to Pennsylvania Rules of Civil Procedure is date on which clerk makes notation in docket that written notice of entry of order has been given as required by Rule 236(b)). Grandmother filed an amended notice of appeal on December 5, 2024. We have amended the caption accordingly.

After review, we are satisfied that the parties' substantive rights have been fully resolved, and we have no concern as to the finality of the order from which Grandmother takes her appeal. **See G.B.**, 670 A.2d at 720 n.11 (when only details of implementation remain and parties' substantive rights are resolved, order is deemed final).

(court must delineate reasons for decision on record in open court or in written opinion or order and failure to do so is reversible error). The trial court thereafter prepared a responsive supplemental opinion, and the parties filed supplemental briefs with permission of this Court.

On appeal, Grandmother raises the following issues for our review:

1. Did the [trial] court commit an error of law and/or abuse its discretion by failing to delineate its reasons for its decision on the record in open court or in written opinion or order to allow the appellate court or [Grandmother] to review and understand the reasons behind the court's decision pursuant to [Section] 5323(d) and well-established law?

2. Did the [trial] court commit an error of law and/or abuse its discretion by questioning the parties as if considering the exceptions *de novo* without either party being sworn under oath nor subject to cross examination?

3. Did the [trial] court commit an error of law and/or abuse its discretion by rendering a decision which was manifestly unreasonable and/or the product of partiality and/or bias based upon the evidence of the record?

4. Did the [trial] court commit an error of law and/or abuse its discretion by not giving the hearing officer's report and recommendation the weight and reliance it deserved when determining to grant [Father]'s exceptions?

5. Did the [trial] court commit an error of law and/or abuse its discretion by rejecting the hearing officer's findings and recommendations which were issued in accordance with the best interests of the child; hence, the decision rendered by the court is not in the best interest of the child in accordance with 23 [Pa.C.S. §] 5328(a) and/or 23 [Pa.C.S. §] 5328(c)?

Appellant's Brief, at 7 (unnecessary capitalization omitted). Additionally, in her supplemental brief, Grandmother again raises each of these issues and notes her complaint that the trial court failed to place its reasons for its

- 4 -

decision on the record in accordance with Section 5323(d), despite this Court's order to do so and despite the trial court's attempt at doing so in drafting a supplemental opinion. **See** Appellant's Supplemental Brief, at 4-14.

In her first issue, Grandmother argues that although the trial court filed a supplemental opinion, it still failed to comply with the requirements of Section 5323(d). **See** Appellant's Supplemental Brief, at 4-5. Grandmother claims the trial court erroneously failed to specify why Grandmother's requested grant of partial custody "would not serve [C]hild's best interests, despite [Grandmother's] established and longstanding role in [C]hild's life as required by [Section] 5328(c) and relevant case law." **Id.** at 4. Further, Grandmother maintains that the court failed to identify the record evidence that additional time with Grandmother would disrupt Child's "stability, undermine Father's authority, or otherwise result in harm or detriment," thereby resulting in an abuse of discretion and misapplication of law. **Id.** at 5.

Alternatively, Grandmother argues that there is sufficient record evidence, as reflected in the transcript of testimony from the partial custody hearing, to grant her petition, reverse the trial court, and uphold the findings and recommendations of the hearing officer that recommended granting her overnight visits with Child. **See** Appellant's Brief, at 21-23. Specifically, Grandmother cites **Kimmey v. Kimmey**, 409 A.2d 1178 (Pa. Super. 1979), for the proposition that remand is unnecessary here "because the record is sufficiently complete and clear to decide which party should be granted

custody even without the benefit of further explanation by the lower court."
Appellant's Brief, at 20, *quoting Kimmey*, 409 A.2d at 1184.

Grandmother further relies on *K.B. v. M.F.*, 247 A.3d 1146 (Pa. Super. 2021), for the rule of law that, "[a]lthough advisory, the hearing officer's report and recommendations are given the fullest consideration particularly on the issue of credibility of witnesses, which the trial court is not empowered to second-guess." *Id.* at 1150. Grandmother claims that the court committed reversible error by failing to credit the hearing officer's determination and recommendation that Grandmother should be entitled to custodial overnights. *See* Appellant's Brief, at 23.

This Court's standard of review for an order setting forth parties' custody rights is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
>
> [. . .] This Court has discussed a trial court's responsibilities with respect to custody actions that proceed before a hearing officer:
>
>> Where the parties proceed by agreement before a hearing officer on the issues of standing and partial custody for purposes of visitation, the trial court is required to make an independent review of the record to determine whether the

hearing officer's findings and recommendations are appropriate. Although advisory, the hearing officer's report and recommendations are given the fullest consideration particularly on the issue of credibility of witnesses, which the trial court is not empowered to second-guess.

**K.B.**, 247 A.3d at 1150 (citations, ellipsis, and footnote omitted).

Grandparents may petition the court for partial custody of their grandchildren by meeting their burden of establishing that partial custody is in the child's best interest and will not interfere with the parent-child relationship:

The Child Custody Act provides that grandparents may file an action for partial physical custody or supervised physical custody in certain situations, including where the parent of the child is deceased. We have emphasized that the burden is on the grandparents to demonstrate that partial custody or visitation in their favor is in the child's best interest and will not interfere with the parent-child relationship. The paramount concern in custody cases, including those in which grandparents are seeking rights, is the best interests of the child. A determination of the best interests of the child is based on consideration of all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being.

**Id.** at 1151 (citations, quotation marks, and footnote omitted).

As it relates to the factors the court must consider in conducting its independent review, we have explained that "all of the sixteen best interest factors set forth in Section 5328(a),[2] as well as the three statutory custody

---

[2] Specifically, at the time of the June 2024 partial custody hearing before the hearing officer, Section 5328(a) provided as follows:

**§ 5328. Factors to consider when awarding custody.**

*(Footnote Continued Next Page)*

---

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

*(Footnote Continued Next Page)*

factors pertaining to grandparents listed in Section 5328(c)(1),[3] are required to be considered by the trial court when grandparents are seeking custody rights." *Id.* at 1152-53 (citation, quotation marks, and brackets omitted).

---

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

[3] In awarding partial physical custody or supervised physical custody to a grandparent who has standing under 23 Pa.C.S. § 5325(1), the trial court must consider:

(i) the amount of personal contact between the child and the party prior to the filing of the action;

(ii) whether the award interferes with any parent-child relationship; and

(iii) whether the award is in the best interest of the child.

23 Pa.C.S. § 5328(c)(1).

Here, in the trial court's supplemental opinion, it considered the necessary statutory factors when reviewing the partial custody hearing transcript, as follows:

The testimony established that other than for ten days immediately after [C]hild was born[,] when Grandmother stayed with Father and Mother in Pittsburgh, her personal contact with [C]hild was limited to approximately once every 1 to 3 months, when Grand[mother] would travel to Pittsburgh or Mother and Father would travel to Altoona. [C]hild only stayed once overnight at Grandmother's without one or both parents, on a Saturday night when Mother and Father attended an out-of-town wedding. Grandmother noted that she worked[,] had dogs to care for[,] and parents two hours in the other direction[,] all of which limited her ability to spend time with her daughter and grandchild more frequently. [The trial court finds] that the evidence showed that prior to Mother's hospitalization, Grandmother had a typical relationship with her grandchild where the child lives 2 to 3 hours away[ that consisted of] visits during the day on weekends in Pittsburgh and Altoona, with one or both parents. There were no overnight visits without a parent, which is the relief Grandmother seeks here.

Mother was hospitalized for twenty-five days in July[,] remained in Pittsburgh through September after her discharge and then lived with her parents through her tragic death in October. During this time, Mother was permitted supervised visits on weekdays in Pittsburgh. Grandmother could not attend these during the week because she worked. After the move to Altoona, Grandmother saw [Child] three times when she drove [Mother] to Pittsburgh for visits.

After Mother's death, Father continued to allow contact between [C]hild and Grandmother, both in Pittsburgh and Altoona. These were day visits when Grandmother would drive to Pittsburgh or Father would drive with [C]hild to Altoona. After Grandmother was permitted to intervene in this action, Father agreed to an interim custody order that provided two day visits each month: one in Pittsburgh and one in Altoona. They lasted about 6 hours.

Following one of these visits, Grandmother called [Children and Youth Services (CYF)] and expressed concern that [C]hild may

- 10 -

have ingested marijuana. [Grandmother] was aware that Father had a medical marijuana card[ and] based th[e report] on [C]hild seeming lethargic and glassy[-]eyed. [Grandmother] did not first bring this up with Father; she first called CYF. No evidence was presented that confirmed Grandmother's suspicions[,] and CYF closed the case the day they spoke with Father. Grandmother, when asked why she brought this incident up, responded: "I am not the enemy, I'm the help. I'm the mother figure that is not here anymore. I don't want to take [C]hild away from [Father]. I want to love [Child], and I don't feel—I can't continue to keep travelling to Pittsburgh so often. I work full time. I'm going to be 59 years old." Grandmother twice repeated this desire to be the "mother" in [Child]'s life. This caused the hearing officer to express concern that Grandmother would try to exercise parental authority and made it clear to Grandmother that she could not do so.

Father's testimony did not differ materially from Grandmother's. [Father] generally confirmed the frequency and location of the visits, both before and after Mother's death. [Father] agreed that Grandmother was an important part of [Child]'s life and expressed a desire to continue to have [Grandmother] involved as a grandmother. [Father] did relate that during the time that Mother lived in Altoona[,] he received communications from Grandmother's husband, Robert Lantz[,] and [Mother]'s brother[,] demanding that [Father] relinquish custody to [Mother] in Altoona and threatening to take legal action to secure that. Despite this, Father continued, after Mother's death, to facilitate a relationship between [C]hild and Grandmother, including twice monthly visits.

\* \* \*

The first factor [the trial court] must consider in weighing Grandmother's request is the amount of personal contact between the child and the party prior to the filing of the action. It is undisputed that prior to Mother's hospitalization, the contact was limited to occasional visits where one or both parents would be present, either in Pittsburgh or Altoona. There was only one occasion when the child was left in the care of Grandmother overnight without either [of the] parents present. After Mother's hospitalization and continuing after her death a short time later, visitation happened two times each month, for approximately [six] hours, once in Pittsburgh and once in Altoona.

- 11 -

The interim order essentially incorporated this visitation schedule that Father and Grandmother were following voluntarily. Accordingly, the amount of contact between Grandmother and [C]hild was entirely consistent with Father's proposed order, which this court determined was appropriate in response to Father's exceptions. Grandmother's request, and the hearing officer's recommendation, that Grandmother receive overnight visits that would eventually result in a full week of summer vacation custody, [and] overnights during holidays and spring break were never in place. [The trial court] determined, based on the record, that the appropriate amount of contact would be the day visits twice per month that had been the parties' practice. [The trial court concluded] the expansion of custody sought by Grandmother and recommended by the hearing officer was [not] appropriate.

The second factor is whether the award interferes with any parent-child relationship. [The trial court found] the expansion of custody from the current schedule would interfere with Father's relationship with his daughter. Grandmother made several statements about replacing Mother and taking on the role of Mother. [Grandmother] also filed a baseless report with CYF expressing concern over the safety of [C]hild. [The trial court] concluded that this evidenced [Grandmother's] willingness to overstep her role as grandmother, which would interfere with the father-daughter relationship. [. . .] Grandmother also made comments during argument on the exceptions that further evidenced her belief that she should be permitted to act as more than a Grandmother.[4]

---

[4] Since the argument before the trial court was not part of the record before the hearing officer, the trial court should not have considered that argument in its review. *See K.B.*, 247 A.3d at 1150 (trial court is required to make independent review of record). Nevertheless, as set forth in greater detail later in this decision, we conclude the court's determination that overnights with Grandmother would interfere with the parent-child relationship is sufficiently supported by the record before the hearing officer because the hearing officer, in response to Grandmother's testimony, warned and instructed Grandmother on multiple occasions not to overstep into a parenting role. *See* N.T. Partial Custody Hearing, 6/6/24, at 72-73, 75. Additionally, Father clearly explained the disruptions to Child's schedule, including to her

*(Footnote Continued Next Page)*

The final factor [the trial court] must analyze is whether the award is in the best interests of [C]hild. [The trial court determined] that providing overnight visits, away from Father, [for] a child who just lost a mother, was [not] in that child's best interests at this time. Because this is a claim by a grandparent for partial custody, it is not necessary to discuss each factor for custody set forth at [S]ection 5323 in explaining why [the trial court finds] the best interests of the child would be served by the order entered upon remand to the hearing officer.[5]

[Nevertheless, the court found] that each of the factors relevant to a claim for [a] grandparent's [petition for] partial custody weighed in Father's favor. Those factors that address the safety of [C]hild, factors 2.1 & 2.2, favored neither party as there has been no suggestion that either party was neglectful or abusive. Factor 2.3 weights in Father's favor as he has demonstrated a willingness to continue to have Grandmother and her family involved in [C]hild's life. [Father] facilitated contact even before the interim order. Factor 3 is not relevant as Father is the only party with parental duties. Factor 4 weighs heavily in Father's favor as he has, during the difficult times caused by Mother's hospitalization and death, maintained stability and continuity for [C]hild. [C]hild has no siblings and is too young to have a preference, so those factors were not considered. Factor 8 weighs in Father's favor. Grandmother's call to CYF is troubling in this regard. Factors 9 and 10 also favor Father. The extended distance between the parties makes more frequent and extended visits with Grandmother difficult so Factor 11 favors Father. As for the 12th factor, Father has already demonstrated the ability to assure care for [C]hild when he is working. Finally, [F]actors 13, 14[,] and 15 are not considered as there is no evidence that any are present. [The trial court] carefully weighed the evidence presented at the hearing and the factors [. . .] required to [be] consider[ed] and conclude[s] that [C]hild's interests are best

---

naptime, as well as disruptions to his own, including to the time regularly set out for shopping, laundry, and general upkeep. *See id.* at 128-32.

[5] We observe that this is an incorrect statement of law because the court is required to consider all of the relevant factors. *See K.B.*, 247 A.3d at 1153 ("The record must be clear on appeal that the trial court considered **all the factors**.") (emphasis added). Nevertheless, we discern no error or prejudice where the court immediately proceeded to consider all of the relevant factors.

served, at least at [Child's] present age, with the custody schedule set forth in the order issued upon demand. [The court also considered that], as [C]hild ages, more time with Grandmother, including overnight visits, may be appropriate. Father has demonstrated an intention to maintain a relationship between Grandmother and [Child,] and [the court found] that he will likely consider [overnight visits] at the appropriate time.

Supplemental Trial Court Opinion, 4/9/25, at 4-8 (citations, quotations marks, ellipses, and unnecessary capitalization omitted).

After our review, contrary to Grandmother's claims, we are satisfied that the trial court appropriately considered each of the required factors and properly set forth its analysis in its supplemental opinion. Further, we observe that it is Grandmother's burden to establish that overnight visits are in Child's best interest, which burden the trial court found Grandmother failed to carry and which determination we find is supported by the record. *See K.B.*, 247 A.3d at 1150. Indeed, we conclude there is record support, in the form of, *inter alia*, Grandmother's unnecessary CYF report where she should have first contacted Father about her concerns, as well as the disruptions to Child's and Father's schedules, for the trial court to conclude that overnight visits with Grandmother were not in Child's best interest. *See id.* We also reject Grandmother's arguments that there is sufficient record evidence to grant her requested partial custody of Child, especially where our standard of review requires that we accept findings of the trial court that are supported by competent evidence and may not make independent factual determinations. *See id.* Accordingly, Grandmother is not entitled to relief on her first issue on appeal.

In her second issue, Grandmother argues the court erred by "questioning the parties, hence eliciting testimony, without either party being sworn under oath, placed on the record, nor subject to cross examination." Appellant's Brief, at 24. We are nevertheless unable to review this claim.

We conclude this claim is unreviewable because there are no transcripts of the parties' argument before the trial court in the certified record. *See Kessler v. Broder*, 851 A.2d 944, 950 (Pa. Super. 2004) ("[i]t remains the appellant's responsibility to ensure that a complete record is produced for appeal[, and t]he failure of the appellant to ensure that the original record certified for appeal contains sufficient information to conduct a proper review may constitute a waiver of the issues sought to be examined"); *see also* Pa.R.A.P. 1911; Pa.R.A.P. 1921. Since Grandmother's claim is dependent on our review of the transcript of the proceedings before the trial court and no transcript of such proceedings exists in the certified record, we are unable to reach the merits of Grandmother's claim. *See Rosselli v. Rosselli*, 750 A.2d 355, 359 (Pa. Super. 2000) ("For purposes of appellate review, what is not of record does not exist."). Accordingly, we find that this claim is waived and unreviewable.

Finally, we review Grandmother's third, fourth, and fifth issues on appeal together. Taken as a whole, Grandmother argues that the court erred or abused its discretion by rendering a biased decision, not giving the hearing officer's report and recommendation the weight and reliance it deserved under the appropriate standard of review, and because the court rejected the

hearing officer's findings and recommendations, which were issued in accordance with the best interests of the child, thereby rendering the trial court's decision not in the best interest of Child.

As to evidence of the court's bias against her, Grandmother specifically identifies that the court failed to delineate its reasons for granting Father's exceptions, notes the court's "elicitation of off[-]the[-]record testimony, which [] Grandmother [] characterizes as extremely insensitive and antagonistic, and [points to] the quick turnaround of its determination on Father's exceptions" after oral argument before the trial court. Appellant's Brief, at 25-26.

Further, Grandmother relies on the applicable standard of review, which she says the court failed to follow, and argues that, "although advisory, the [h]earing [o]fficer's report and recommendations are to be given the fullest consideration particularly on the issue of credibility of witnesses, which the trial court is not empowered to second-guess." *Id.* at 36, *quoting K.B.*, 247 A.3d at 1150.

Last, Grandmother claims that she has maintained a role in Child's life, which "is undoubtedly in [Child's] best interests" because "Grandmother is practically the only remaining biological connection [C]hild has to [M]other." *Id.* at 31, *quoting Commonwealth ex rel. Williams v. Miller*, 385 A.2d 992 (Pa. Super. 1978) ("[visits] with grandparents are often a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship"). Underpinning her argument, Grandmother

contends that this case is governed by our decision in ***Douglas v. Wright***, 801 A.2d 586 (Pa. Super. 2002), insofar as that case similarly involved a deceased mother. Therein, this Court upheld the trial court's award of partial custody to the maternal grandparents who showed a close and loving relationship with the child before and after the mother's death, and there was no evidence of interference with the father's parental authority. ***See*** Appellant's Brief, at 28. No relief is due.

Here, we conclude that the court did not err or abuse its discretion. First, insofar as Grandmother's claims of bias depend upon a review of the transcripts of the argument before the trial court, which transcripts are not of record, those claims are unreviewable. ***See Kessler***, 851 A.2d at 950; ***Rosselli***, 750 A.2d at 359. Second, contrary to Grandmother's argument, the trial court provided complete reasoning for its custody order in its supplemental opinion, and we otherwise decline to find a presumption of bias where a court disposes of its case load expeditiously, especially without additional indicia of such judicial bias. As discussed below, the court properly applied the appropriate standard of review for the hearing officer's recommendation, and therefore, we discern no bias or prejudice.

Indeed, under the applicable standard of review, the trial court was required to conduct an independent review of the record created before the hearing officer to confirm that the hearing officer's findings and recommendations are appropriate considering the record. ***See K.B.***, 247 A.3d at 1150. As noted by Grandmother several times in her brief, the hearing

officer's report **is only advisory**. *See id.* Although the hearing officer's recommendations are to be given the fullest consideration on the issue of credibility, which the trial court may not second-guess, the trial court here specifically noted that it did not weigh the credibility of witnesses. *See id.*; *see also* Supplemental Trial Court Opinion, 4/9/25, at 3-4 ("[The trial court's] analysis[] is based on [] review of the transcript of the partial custody hearing[. The trial court] note[s] that in conducting its analysis,] it was not necessary [to] make any credibility determinations as, on relevant matters, the parties did not dispute the material facts."). Indeed, we observe that the hearing officer's conclusion that Grandmother should be entitled to custodial overnights is not dependent on any credibility determination, and Grandmother has not identified any credibility determinations at issue in this appeal. Accordingly, we discern no abuse of discretion.

After our review, we are satisfied that the trial court properly analyzed this case under the appropriate standard of review when conducting its independent analysis, considering the hearing officer's recommendations and the record, because the trial court's findings are supported by competent evidence of record. *See K.B.*, 247 A.3d at 1150. Indeed, we find *Douglas* is inapposite here because there is record evidence of Grandmother's interference with Father's parental authority over Child as well as evidence that overnights would be disruptive to Child's and Father's schedules. *See* N.T. Partial Custody Hearing, 72-73, 75, 128-32. Accordingly, Grandmother is not entitled to relief on her final three issues on appeal.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/30/2025